[No. 36478.   Department One.   May 16, 1963.]

MARY ANN BLOOD, *Appellant*, v. ALLIED STORES CORPORATION, *Respondent*.*

*Griffin & Johnson* and *Wettrick, Toulouse, Lirhus & Hove,* for appellant.

* Reported in 381 P. (2d) 742.

*Rosling, Williams, Lanza & Kastner (James A. Noe,* of counsel), for respondent.

DAWSON, J.[†]—Mary Ann Blood, plaintiff, sued for damages resulting from personal injuries allegedly suffered when she, a business invitee, fell while riding on a descending escalator, operated by defendant between the first and basement floors of its Seattle Bon Marche store. She pleaded negligence on the part of defendant, which was denied. Defendant raised no affirmative defense. Plaintiff appealed from an adverse jury verdict.

An elderly woman was descending in front of appellant on the same escalator. She suddenly fainted, or blacked out momentarily, and fell at the foot of the escalator, without warning, and in front of appellant, who was carried downward and propelled against her at the bottom of the escalator. Appellant was unable to extricate herself and also fell. It may be said categorically that the jury's exculpation of respondent could have been based on either of two grounds: (1) the fall and its consequences were, in law, an unavoidable accident; or (2) appellant failed to prove, by a fair preponderance of the evidence, actionable negligence on the part of respondent.

We cannot review the following two assignments of error now urged.[1] The first of these is directed to instruction No. 11 which reads:

"If you find that Mrs. Theresa Monell fell on the descending escalator herein because she fainted, blacked out or lost consciousness, then the defendant is not liable for any injuries suffered by the plaintiff proximately caused by Mrs. Monell's fall."

Exception to this instruction in the trial court was on the sole ground that it was repetitious. Appellant asserts here for the first time a different and new ground of error. Under these circumstances, we do not consider the merits of

---

[†] Judge Dawson is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

[1] In view of our disposition of these assignments, it should be pointed out that the appellant's counsel on appeal were not counsel of record in the trial court.

appellant's assertion. *Owens v. Anderson*, 58 Wn. (2d) 448, 364 P. (2d) 14.

The second of these reads:

"The court erred in rejecting plaintiff's exhibits Nos. 37 and 38, [*sic*] which exhibits are records of previous falls on the escalators in question in which fingers and/or clothing were caught in the mechanism."[2]

■ Evidence of other accidents is often admissible to establish a dangerous or defective condition and notice of a defect. *Porter v. Chicago, M., St. P. & P. R. Co.*, 41 Wn. (2d) 836, 252 P. (2d) 306. Because collateral issues are thereby interjected into a case, as a predicate for admission, there must be a substantial similarity shown between the proffer and the case at bar. Each case presents a question *ad hoc* and leaves all collateral requirements as to similarity to the trial court's informed discretion. See annotation, 70 A. L. R. (2d) 170.

The trial court determined that the reports it examined showed no similarity, and counsel was not foreclosed from thoroughly meeting collateral requirements as to these or the remaining reports. We have carefully examined the record and conclude that, in view of the indicated paucity, we are unable to consider the merits of this assignment.

The three remaining assignments challenge instructions Nos. 8 and 13, given by the court as part of the law of the case, and the trial court's rejection of evidence offered to show availability of additional stopping devices. We shall consider these in order.

Instruction No. 8 reads:

"You are instructed that the fact that the plaintiff was injured while in the defendant's store does not alone and by itself constitute proof that the defendant was negligent.

"You are instructed that the law does not require the owner of a store to guarantee or insure the safety of its customers while in the store; hence, a storekeeper is not liable

---

[2] Exhibits Nos. 37 and 38 were, in fact, admitted and did not relate to previous falls. There were approximately 20 reports of other accidents, but, through inadvertence or other reason, none of these was marked as an exhibit, identified, offered, and none is now available for our information.

merely because the customer is injured in the store. The storekeeper is liable only for negligence, and the burden is upon the plaintiff to prove such negligence by a fair preponderance of the evidence."

Appellant contends that the high standard of care doctrine as it pertains to common carriers, was adopted by the trial court and became the law of the case and that the challenged instruction does not measure up to this standard. For a limited purpose, we assume, without deciding, that the common carrier doctrine is applicable under our facts.

■ By this standard, instruction No. 8, standing alone, to say the least, is an incomplete statement of law. But, it is basic that instructions must be considered as a whole. *Sauls v. Scheppler*, 57 Wn. (2d) 273, 356 P. (2d) 714. We note the jury was cautioned by the usual stock instruction to "consider the instructions as a whole, and not pick out any particular instruction and place undue emphasis on such instruction."

Additional instructions given, and relating to this issue, follow:

Instruction No. 7: "In the ordinary action for personal injuries, negligence is defined as a failure to exercise reasonable and ordinary care such as an ordinarily careful and prudent person would use under the same circumstances, but because the plaintiff in this case was riding on an escalator, the defendant owed plaintiff a greater degree of care. The defendant, while not an insurer of the safety of passengers on its escalators, owes them the highest degree of care for their safety which is consistent with the practical operation of the escalators."

Instruction No. 7A: "The operator of a public escalator is bound to exercise a high degree of care and diligence in the selection, maintenance, inspection and use of its escalators and appliances, but it is not required to provide immediately and, regardless of expense, every new equipment that human skill and ingenuity devise to prevent accidents. It is bound to adopt approved appliances that are in general use and necessary for the safety of passengers, if the adoption of such improvement is within its power and reasonably practicable, but it is not obliged to discard those appliances which always have been found to be adequate and safe

merely because they may be a source of possible danger to a passenger, nor to adopt excessively costly improvements or incur such great expense as would make it impracticable for it to carry on its business."

Instruction No. 9: "It is not necessary that plaintiff prove each and every act of negligence charged against the defendant. It is sufficient to warrant a recovery by plaintiff if you find, by a fair preponderance of the evidence, that there has been established one or more acts of negligence, and that such act or acts of negligence was or were a proximate cause of the injuries and damages complained of."

The rules detailed in the above triad are consistent, the content is not questioned, and, having the approval of appellant as the law of the case, we presume they are soundly predicated. The negligence referred to in instruction No. 8 is clearly defined therein as a higher standard than the usual standard, and we do not believe that the jury was misled or confused.

Instruction No. 13 reads:

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, no one may be held liable for injuries resulting from it."

Appellant makes no objection to the form of this instruction, but bases her assignment on the ground of lack of evidence to support it.

Whether the instruction should have been given, of course, depends upon the evidence in the case. *Webb v. Seattle*, 22 Wn. (2d) 596, 157 P. (2d) 312, 158 A. L. R. 810. It is a proper instruction "when the evidence shows or justifies an inference that an unavoidable accident has occurred, as that term has been defined." *Schultz v. Cheney School Dist. No. 360*, 59 Wn. (2d) 845, 371 P. (2d) 59. The rule is stated in *Cooper v. Pay-N-Save Drugs, Inc.*, 59 Wn. (2d) 829, 835, 371 P. (2d) 43, wherein we said:

". . . stated affirmatively, . . . it is proper to give the instruction if there is affirmative evidence that an unavoidable accident occurred; stated negatively, it is error to give the instruction if there is no evidence of an unavoidable accident or if the only issue possible under the facts is that of negligence and contributory negligence. . . ."

There was a sharp conflict in the evidence on the issue of negligence, which the jury settled. It included technical evidence involving clearances and spacing between treads, and between moving and stationary parts of the machine; it included the question of the seasonable stopping of the escalator after the accident, and the devices available for such purpose. The overall issue of proximate cause or causes of appellant's predicament, and its consequences, was also disputed. As illustrative of this conflict, an employee of respondent testified:

"A. I heard an unusual commotion at the base of the escalator. I turned, and I saw an elderly lady in the act of falling. I ran quickly over to her, and I saw that she was grasping at her clothes. And I was afraid that she would get her hand into the escalator. So, I reached over to the right to a little button that's located under sort of a half cup, and I pressed it to stop the elevator, escalator.

"There was a lady several steps back of her, probably six, seven steps up higher coming down. And by the time the escalator stopped, she was at the back of the older person. And there was no place for her to step off.

"As I straightened up, she fell over. The second lady fell over the elderly lady. And we were all three down in sort of a heap."

The jury could have believed this line of testimony and drawn the reasonable inference that the accident occurred without having been proximately caused by negligence on the part of anyone. Such evidence, under our rule, justifies an instruction on unavoidable accident. *Gaylord v. Schwartz*, 46 Wn. (2d) 315, 281 P. (2d) 247.

In approaching the final assignment, we find no torch to dispel the darkness, for no offer of proof was made below.

The record contains much testimony relating to the number and mechanics of various manual and automatic stopping devices presently in use on escalators. John Ford, associ-

ated with Westinghouse in its elevator and escalator division, was called on behalf of plaintiff.[3] The following portion of his testimony bespeaks the question of error:

"Q. I have in mind particularly stopping devices that might be put into play when there is an accident, someone falls on an escalator. Are there any other automatic stopping devices that are used other than in your equipment? A. There are now. There were not in the date you mentioned. Q. Nineteen Fifty-five, Fifty-six. A. No. Q. What about in May of 1959? A. There were some others available, but they were not standard with the various manufacturers in that date, May of '59. Q. What were they? MR. NOE: I will object, your Honor, to any testimony of this type if they were not standard equipment. That is what we're searching for here. THE COURT: Sustained."[4]

■ We would be critical of a perfunctory refusal to consider new devices merely because "they were not standard" with the various manufacturers. Although the standard practice is usually a reasonable and prudent one, and its tests are always persuasive, yet the courts, in the final analysis, must be prepared to say when additional precautions are imperative. But are we not circumscribed by appellant's failure to make an offer of proof?

"The principle upon which we decide this case is that it is the duty of a party to make clear to the trial court what it is that he offers in proof, and the reason why he deems the offer admissible over the objections of his opponent, so that the court may make an informed ruling. If the party fails to so aid the trial court, then the appellate court will not make assumptions in favor of the rejected offer. . . ." *Tomlinson v. Bean*, 26 Wn. (2d) 354, 361, 173 P. (2d) 972.

"(1) If the evidentiary fact desired to be offered is in itself apparently irrelevant, or otherwise dependent on other facts for its admissibility, the offer must contain a statement of the *specific purpose*, or of all the *other facts necessary* to admissibility. . . ." 1 Wigmore on Evidence (3d ed.) § 17, p. 319.

---

[3] The escalator in question was the product of a different manufacturer.

[4] As an explanatory note, certain moving parts of the escalator in question were replaced in 1956. "May of 1959" refers to the date of appellant's accident.

Professor Wigmore states that a common application of the rule is found where, on objection, the trial court excludes an indefinite question.

The question "What were they" is indefinite in the sense that a responsive answer would not necessarily be material, competent or relevant, particularly since it relates to the escalator of a different manufacturer. In the event the answer were material, it could do no more than open the door to further explorations. It would not answer such questions as: Is the device of practical substance, or is it in experimental stage? Is it available for purchase and use? Is its cost prohibitive or within the reach of businesses such as respondent's? Is its use customary, and, if not, are manual and automatic stopping devices now in use so inadequate that its use is imperative in the exercise of reasonable prudence? In the record, there is nothing to indicate that the witness Ford, or other witnesses at appellant's beck and call were available to add flesh and blood to a skeleton, or in the words of Wigmore, to testify to "all the other facts necessary to admissibility."

We will assume that such evidence as outlined would be material, but as this court stated in *In re Schwarzwalter's Estate*, 47 Wn. (2d) 119, 123, 286 P. (2d) 699:

" . . . there is in the record no offer to prove such facts, and we cannot hold that the trial court committed any error when it was never requested to admit such evidence."

Finding no reversible error, the judgment is affirmed.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.